IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-02201-GPG-CYC

ARTHUR WALKER,

     Plaintiff,

v.

KRISTAL BRADSHAW,

     Defendant.

---

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Cyrus Y. Chung, United States Magistrate Judge.**

Plaintiff Arthur Walker alleges that defendant Kristal Bradshaw reassigned him and his cellmate to different housing areas because they are different races and that when he refused her order, she wrote a false report resulting in a disciplinary conviction. ECF No. 1 at 4–5. Because there exist genuine issues of material fact, and the plaintiff cannot challenge his disciplinary conviction in a habeas action, the Court recommends that the defendant's motion for summary judgment, ECF No. 79, be denied as to his equal protection claim. Because the plaintiff cannot sustain a retaliation claim on the undisputed facts in the record, the Court recommends granting summary judgment for that claim. Finally, because the plaintiff did not suffer any physical injury, his remedy for the equal protection claim is limited to nominal damages.

### LEGAL STANDARD

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

"A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Wright ex rel. Tr. Co. of Kan. v. Abbott Lab'ys, Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (quotation marks omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. The dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. "The moving party has both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quotation marks omitted).

If the moving party satisfies its initial burden, the non-moving party "may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Id.* (quotation marks omitted). The specific "facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007). Affidavits and testimony "must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." *Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1030–31 (10th Cir. 2022) (quotation marks omitted). "In considering the nonmovant's evidence, the Court cannot and does not weigh the evidence or determine the credibility of witnesses." *Bertisen v. Travelers Home and Marine Ins. Co.*, 710 F. Supp. 3d 883, 886 (D. Colo. 2024) (citing *Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008)).

The plaintiff's response contains four numbered paragraphs that incorporate argument and attacks on the proffered undisputed material facts without clearly responding to each fact.

The plaintiff also offers the partially-sworn declaration of his former cellmate. ECF No. 86 at 13. However, the amended complaint is signed under penalty of perjury, ECF No. 1 at 4–5, and "[a] district court may treat a verified complaint as an affidavit for purposes of summary judgment if it satisfies the standards for affidavits set out in Rule 56[(c)(4)]." *Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1019 (10th Cir. 2002). Under Rule 56(c)(4), an affidavit "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

Although district courts construe pro se plaintiffs' pleadings "liberally" and hold them "to a less stringent standard than formal pleadings drafted by lawyers," *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)), including during summary-judgment proceedings, *Hall*, 935 F.2d at 1110 n.3, courts "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). And the Court cannot act as a pro se litigant's advocate. *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008). Further, "[a]lthough our summary judgment standard requires us to view the facts in the light most favorable to the non-moving party, it does not require us to make unreasonable inferences in favor of the non-moving party." *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1276 (10th Cir. 2008). Accordingly, the Court considers the amended complaint to the extent it meets the requirements of Fed. R. Civ. P. 56(c)(4) and offers something more than conclusory and self-serving statements. *Thomas v. U.S. Bureau of Prisons*, 282 F. App'x 701, 704 (10th Cir. June 24, 2008) (unpublished) (teaching that a plaintiff's "conclusory and self-serving statements, even if presented in an

affidavit, are insufficient to create a genuine issue of fact to survive summary judgment"). The

Court does not consider the unsworn allegations in the plaintiff's former cellmate's declaration.

## **FACTS**

Because a district court is tasked with determining whether there is a genuine dispute as

to any material fact, Fed. R. Civ. P. 56(a), the Federal Rules of Civil Procedure require a party

"asserting that a fact . . . is genuinely disputed" to "support the assertion by . . . citing to

particular parts of materials in the record." Fed. R. Civ. P. 56(c). The presiding judge's Practice

Standards further require particular denials or admissions of a movant's proposed set of

undisputed facts by a party opposing summary judgment with specific citations to evidence in

the record. GPG Civ. Practice Standard 7.1D(b)(4). As noted above, the plaintiff's response,

ECF No. 86, does not comply with Fed. R. Civ. P. 56(c) or the presiding Judge's Practice

Standards. As a result, the Court may consider any unchallenged facts the defendant offers to be

undisputed for this motion. Fed. R. Civ. P. 56(e)(2). However, in light of the plaintiff's *pro se*

status, it exercises its discretion to consider the non-conclusory allegations in the plaintiff's

verified complaint that create genuine issues of material fact even though the plaintiff has not

specifically cited to them in his response. *See Downes v. Beach*, 587 F.2d 469, 472 (10th Cir.

1978); *Long v. Morris*, 485 F. Supp. 2d 1247, 1249 (D. Kan. 2007).

Except where indicated, the following facts are undisputed and identified by reference to

"particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1)(A), viewed in the light most

favorable to the plaintiff.

The plaintiff, a Colorado Department of Corrections ("CDOC") inmate, filed this lawsuit

under 42 U.S.C. § 1983 on August 8, 2024. ECF No. 1. At all relevant times, the plaintiff was

incarcerated at Bent County Correctional Facility ("BCCF"), and the defendant was an Assistant Shift Supervisor at BCCF. *Id.* at 4[1]; ECF No. 79 ¶ 2.

On the morning of June 2, 2023, a corrections officer went to the plaintiff's cell and informed the plaintiff, who is Black, and his cellmate, who is white, that they had been ordered to move to different cells. ECF No. 1 at 4; ECF No. 79 ¶ 3, 5–6. The plaintiff and his cellmate went to speak with the defendant in her office about the order. ECF No. 1 at 4; ECF No. 79 ¶ 7; ECF No. 79-2. The plaintiff and his cellmate told the defendant that they were friends and that they did not want to be separated. ECF No. 1 at 4–5; ECF No. 79 ¶ 7; ECF No. 79-2.

The parties dispute what happened next. According to the plaintiff, the defendant told him and his cellmate "that [they] have to be segregated from the cell [they] live in . . . because she don't cell [n****s] and good white dudes together." ECF No. 1 at 4. The plaintiff further alleges that he and his cellmate refused to separate and the defendant said if they "don't segregate and separate from the cell[,] [they] were going to be put in disciplinary segregation," and reiterated that she "[didn't] know who moved [them] together[,] but she only move [n****s] with [n****s]." *Id.* at 4–5.

For the defendant's part, she states that while she had the authority to move the plaintiff and his cellmate to different housing units and ordered them to do so, she did not personally make the decision to move them. ECF No. 79-4 ¶¶ 4–5. According to the defendant, she believed and told them that they were being moved because of facility needs, ECF No. 79-2 at 1, although she later learned that they were being separated because of a pending Prison Rape Elimination Act investigation, ECF No. 79-4 ¶ 5.

---

[1] The cited page number refers to the number in the ECF heading.

The parties agree that the plaintiff told the defendant he was refusing the new housing assignment, ECF No.1 at 4; ECF No. 79 ¶ 7; ECF No. 79-2 at 3, and that she informed him that he would be placed in the Restrictive Housing Unit ("RHU") and charged with a Code of Penal Discipline ("COPD") violation if he persisted in refusing that order. ECF No. 1 at 4; ECF No. 79 ¶ 9. The plaintiff continued to refuse the order, was placed in RHU, and charged with a COPD Class II Rule 22 violation, Disobeying a Lawful Order. ECF No. 1 at 5; ECF No. 79 ¶ 10; ECF No. 79-3. He later pleaded guilty to that charge in a disciplinary hearing, and was sentenced to 11 days in RHU. ECF No. 79 ¶ 11; ECF No. 79-5; ECF No. 79-6 (audio recording of disciplinary hearing). The disciplinary hearing officer declined to additionally impose the loss of fifteen days of good time. ECF No. 79-6 at 6:30–7:25.

The plaintiff's COPD conviction has not been invalidated or removed from his CDOC record. ECF No. 79 ¶ 13.

The plaintiff suffered no physical injury as a result of the defendant's actions. *Id.* ¶ 14.

## ANALYSIS

Under the heading of a single claim, the plaintiff asserts "unlawful racial discrimination," "unlawful racial segregation," "unlawful retaliation," "violation of due process," "cruel and unusual punishment," and violation of "equal protection." ECF No. 1 at 4. Giving the complaint a "broad reading," *Hall*, 935 F.2d at 1110, as the Court must, the plaintiff asserts two cognizable constitutional claims. First, his allegations that the defendant assigned him and his cellmate to different housing on account of the plaintiff's race can be read to allege a violation of equal protection under the Fourteenth Amendment. ECF No. 1 at 4–5. Second, the plaintiff's allegation that the defendant wrote a "bogus disciplinary report" and sent him to RHU "solely"

6

to "punish" him because he "refuse[d] to be segregated" can be read as asserting a First

Amendment retaliation claim. *Id.* at 5. Only the first claim survives summary judgment.

### A. The Equal Protection Claim

Under our Constitution, "[n]o State shall . . . deny to any person within its jurisdiction the

equal protection of the laws." U.S. Const, amend. XIV, § 1. "The Equal Protection Clause of the

Fourteenth Amendment protects inmates from invidious discrimination." *Casillas v. Beach*, No.

08-cv-02327-WYD-CBS, 2010 WL 1348397, at *4 (D. Colo. Mar. 31, 2010) (citing *Wolff v.

McDonnell*, 418 U.S. 539, 556 (1974)). Courts apply strict scrutiny to claims of racial

segregation by prison officials. *Johnson v. California*, 543 U.S. 499, 507–08 (2005); *see also

United States v. Wyandotte Cnty.*, 480 F.2d 969 (10th Cir. 1973); *Sockwell v. Phelps*, 20 F.3d

187, 191 (5th Cir. 1994). A policy of racially segregated inmate housing will be held

unconstitutional unless prison administrators show that it "is narrowly tailored to serve a

compelling state interest." *Johnson*, 543 U.S. at 509.

An equal protection violation may be shown on "even a single instance of race

discrimination[.]" *Flowers v. Mississippi*, 588 U.S. 284, 300 (2019); *Village of Arlington Heights

v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 n.14 (1977) (noting that "a single invidiously

discriminatory governmental act" is not "immunized by the absence of such discrimination in the

making of other comparable decisions"). A plaintiff alleging a violation of equal protection must

"prove a racially discriminatory intent or purpose was a motivating factor in the defendant's

conduct," *Casillas*, 2010 WL 1348397, at *4, which may be shown by either direct evidence

indirect evidence. *Marshall v. Columbia Law Regional Hosp.*, 345 F.3d 1157, 1168 (10th Cir.

2003). Direct evidence of discrimination includes "oral or written statements on the part of a

defendant showing a discriminatory motivation." *Nairn v. JP Morgan Chase & Co.*, No. 24-cv-00064-DDD-KAS, 2025 WL 4091216, at *4 (D. Colo. Feb. 12, 2025).

In his verified complaint, the plaintiff makes sworn factual allegations that satisfy Rule 56(c)(4): (1) the defendant told him and his cellmate that they have to be "segregated from the cell [they] live in"; and (2) she was separating them because of her personal policy of not letting Black and white inmates cell together. ECF No. 1 at 4. While disputing the plaintiff's account, including that she made the cell reassignment decision at all, the defendant admits that she had the authority to reassign the plaintiff's housing and ordered him and his cellmate to relocate. Accordingly, the plaintiff has done enough to show genuine disputes of material fact on his equal protection claim, precluding summary judgment.

The defendant's arguments to the contrary are unavailing. First, she argues that the plaintiff has no constitutional right to his preferred housing assignment, ECF No. 79 at 4, and that, standing alone, the defendant's alleged use of a racial epithet does not establish a constitutional violation, *id.* at 6. It is true enough that "state prisoners … do not have a constitutional right to be housed with a cell-mate of their choosing," *Quick v. Mann*, 170 F. App'x 588, 590 (10th Cir. 2006), and that "[t]he use of racially derogatory language, while unprofessional and deplorable, does not violate the Constitution." *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) (per curiam). But that does not resolve the plaintiff's claim because he complains that the defendant subjected him to prohibited racial discrimination, not merely that she reassigned his housing or called him a racial slur.

Second, the defendant's argument, raised in reply, that the plaintiff cannot show an equal protection violation because his cellmate received the same treatment is also off the mark. ECF No. 87 at 5. The Supreme Court has squarely foreclosed the notion that "racial classifications

may survive when visited upon all persons[.]" *Flowers*, 588 U.S. at 300; *Johnson*, 543 U.S. at 506 (rejecting argument that racially segregated housing policy was exempt from strict scrutiny because it was applied equally to white and Black prisoners).

Third, and finally, the plaintiff's equal protection claim is not barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *See* ECF No. 79 at 6–8. *Heck* bars a state prisoner's claim for damages under 42 U.S.C. § 1983 "'if a judgement in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence,' unless the prisoner can demonstrate that the conviction of sentence has previously been invalidated.'" *Edwards v. Balisok*, 520 U.S. 641, 643 (1997) (quoting *Heck*, 512 U.S. 477, 487 (1994)). The doctrine also applies to prison disciplinary convictions "when the alleged unconstitutional conduct would support a core habeas claim." *Marshall v. Milyard*, 415 F. App'x 850, 854 (10th Cir. 2011) (citing *Edwards*, 520 U.S. at 643); *see also Cardoso v. Calbone*, 490 F.3d 1194, 1199 (10th Cir. 2007).

To be sure, the plaintiff's claim would necessarily imply the invalidity of his outstanding COPD conviction. His conviction for Disobeying a Lawful Order presupposes that the defendant's order was not constitutionally invalid. *See, e.g.*, *Sexton v. Hickenlooper*, No. 13-cv-01008-MSK-KMT, 2014 WL 1091936, at *4 (D. Colo. Mar. 19, 2014) (explaining that a plaintiff previously convicted of resisting arrest would be barred from bringing a § 1983 claim for false arrest "because such a claim necessarily implies that the arrest was not lawful"). But that does not end the matter. The Tenth Circuit has questioned whether *Heck* applies to prison disciplinary convictions that do not affect the timing of release and for which no habeas remedy is available, *Harrison v. Morton*, 490 F. App'x 988, 992 (10th Cir. 2012), and at least one district court has concluded that it does not. *Mackey v. Watson*, No. 17-cv-01341-CMA-STV, 2017 WL 6016351, at *11–12 (D. Colo. Dec. 5, 2017). This conclusion is consonant with the "purpose

9

behind *Heck*," which "is to prevent litigants from using a § 1983 action, with its more lenient pleading rules, to challenge their conviction or sentence without complying with the more stringent exhaustion requirements for habeas actions." *Butler v. Compton*, 482 F.3d 1277, 1279 (10th Cir. 2007) (citing *Muhammad v. Close*, 540 U.S. 749, 751–52 (2004) (per curiam)). Accordingly, where the plaintiff cannot bring a habeas action, the "purpose behind *Heck* is not implicated because there is no danger of a plaintiff seeking to avoid the pleading requirements of habeas," and the *Heck* bar does not apply. *Mackey*, 2017 WL 6016351, at *12; *see also Nettles v. Grounds*, 830 F.3d 922, 927–931 (9th Cir. 2016); *Wilkerson v. Samuels*, 524 F. App'x 776, 778 (3d Cir. 2013); *Peralta v. Vasquez*, 467 F.3d 98, 103–04 (2d Cir. 2006).

The record reflects that plaintiff did not lose any good time as a result of his COPD conviction and, under the law of the Tenth Circuit, he cannot file a habeas petition challenging disciplinary proceedings that do not affect "the fact or duration of [his] custody." *Mackey*, 2017 WL 6016351, at *12 (internal quotation marks omitted) (quoting *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 812 (10th Cir. 1997)). The Tenth Circuit has held that habeas is generally unavailable as a vehicle to challenge disciplinary proceedings that result in RHU placement, *Muhammad v. Finley*, 74 F. App'x 847, 849 (10th Cir. 2003), the only punishment the plaintiff received for refusing the order. For these reasons, although it would necessarily imply the invalidity of his COPD conviction, his equal protection claim is not *Heck*-barred.

### B. The Retaliation Claim

On the other hand, the plaintiff's claim that the defendant retaliated against him for refusing her order by filing a "bogus disciplinary report" and placing him in RHU is not cognizable on the undisputed facts in the record. ECF No. 1 at 5.

To establish a First Amendment retaliation claim, a plaintiff must show that: (1) he engaged in constitutionally protected activity; (2) the defendant's actions would have chilled a person of ordinary firmness from continuing that activity, and; (3) the defendant's adverse actions were substantially motivated by the plaintiff's exercise of constitutionally protected activity. *Parkhurst v. Shannon*, 172 F.4th 1176, 1182 (10th Cir. 2026) (citing *Leverington v. City of Colo. Springs*, 643 F.3d 719, 729 (10th Cir. 2011)).

The plaintiff's retaliation claim fails at the first step. "To be constitutionally-protected, a person's activity must, at a minimum, be lawful; a person who commits an unlawful act, even with the most noble of First Amendment intentions, can nevertheless be punished for that unlawful act." *Georgacarakos v. Wiley*, No. 07-cv-01712-MSK-MEH, 2010 WL 1291833, at 10* (D. Colo. Mar. 30, 2010). The plaintiff admits that he refused the defendant's order, violating prison disciplinary rules, but claims he did so because the order violated his right to equal protection. ECF No. 1 at 4–5. "Had the Plaintiff chosen to exercise his First Amendment rights by engaging in some form of protest that fell within prison rules, his conduct would be protected. But by choosing to disobey rules as his form of protest, the Plaintiff forfeited any constitutional protections for his actions, and is thus susceptible to whatever proper punishment ensued." *Georgacarakos*, 2010 WL 1291833, at *10. Accordingly, the plaintiff's retaliation claim should be dismissed.

## C.  Request for Compensatory Damages

In all events, the plaintiff's request for compensatory damages in the amount of $900,000, ECF No. 1 at 8; ECF No. 86 at 12, cannot stand because he alleges no physical injury stemming from the defendant's alleged discriminatory actions. *Perkins v. Kan. Dep't of Corrs*., 165 F.3d 803, 807 (10th Cir. 1999). The Prison Litigation Reform Act ("PLRA") provides that

"[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other

correctional facility, for mental or emotional injury suffered while in custody without a prior

showing of physical injury." 42 U.S.C. § 1997e(e); *Searles v. Van Bebber*, 251 F.3d 869, 876

(10th Cir. 2001) ("The statute limits the remedies available, regardless of the rights asserted, if

the only injuries are mental or emotional."); *Stapleton v. Lengerich*, No. 21-cv-00076-RBJ-STV,

2022 WL 4097490, at *5 (D. Colo. July 6, 2022), *recommendation adopted*, 2022 WL 4094066

(D. Colo. Sep. 7, 2022). The plaintiff is therefore limited to recovering nominal damages.

*Searles*, 251 F.3d at 878 (holding that the PLRA does not bar award of nominal damages for

constitutional violations "whose deprivation has not caused actual, provable injury") (internal

quotation marks and citation omitted).

## CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Defendant's Motion for

Summary Judgment, ECF No. 79, be **GRANTED** in part and **DENIED** in part.[2]

It is **RECOMMENDED** that summary judgment be **GRANTED** as to the plaintiff's

retaliation claim.

---

[2] Be advised that all parties shall have fourteen days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive, or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676–83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). <u>Finally, all parties must consult and comply with the District Judge's practice standards for any specific requirements concerning the filing and briefing of objections.</u>

It is **RECOMMENED** that summary judgment be **DENIED** as to the plaintiff's equal protection claim.

It is further **RECOMMENDED** that the plaintiff shall not be permitted to recover compensatory damages.

Respectfully submitted this 17th day of July, 2026, at Denver, Colorado.

BY THE COURT:

_____

Cyrus Y. Chung
United States Magistrate Judge